ATTORNEY FOR PETITIONER:
**PAUL M. JONES, JR.**
ATTORNEY AT LAW
Greenwood, IN

ATTORNEYS FOR RESPONDENT:
**CURTIS T. HILL, JR.**
ATTORNEY GENERAL OF INDIANA
**MEREDITH McCUTCHEON**
**WINSTON LIN**
DEPUTY ATTORNEYS GENERAL
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED
May 13 2019, 3:38 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

|  |  |
|---|---|
| KOKOMO URBAN DEVELOPMENT, LLC, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Cause No. 18T-TA-00020 |
| | ) |
| MINDY HEADY, in her official capacity as | ) |
| HOWARD COUNTY ASSESSOR, | ) |
| | ) |
| Respondent. | ) |

ON APPEAL FROM A FINAL DETERMINATION OF
THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**May 13, 2019**

WENTWORTH, J.

Kokomo Urban Development, LLC has challenged the final determination of the Indiana Board of Tax Review that held when calculating property tax liability, the property tax cap designated in Indiana Code § 6-1.1-20.6-7.5 is applied before, not after, the application of an economic revitalization area deduction. Upon review, the Court affirms the Indiana Board's final determination.

**FACTS AND PROCEDURAL HISTORY**

Kokomo Urban owns a moderate-income apartment complex in Kokomo, Indiana.[1] (See, e.g., Cert. Admin. R. at 146-52.) Given the property's location in an economic revitalization area ("ERA"), Kokomo Urban was entitled to receive a 100% "property tax deduction" for the 2015 tax year and a 50% deduction for the 2016 tax year. (See, e.g., Cert. Admin. R. at 62-79, 113-14 ¶¶ 4-6.)

With the 100% deduction, Kokomo Urban owed no property tax for the 2015 tax year. (See Cert. Admin. R. at 113 ¶¶ 4-5, 184.) For the 2016 tax year, the Howard County Auditor calculated Kokomo Urban's property tax liability as $47,720.46. (Cert. Admin. R. at 114 ¶ 9, 184.) The Auditor calculated that amount as follows:

1) $2,424,200 (gross assessed value of Kokomo Urban's improvements) x 50% (ERA deduction) = $1,212,100;

2) $1,212,100 + $32,500 (gross assessed value of Kokomo Urban's land)[2] = $1,244,600;

3) $1,244,600 x 3.8342% (tax rate) = $47,720.46

(See Cert. Admin. R. at 113-14 ¶¶ 2-3, 6-9.) The Auditor determined that no adjustments to her calculation were necessary because the computed property tax liability did not exceed the property's maximum 2% property tax cap as set forth in

---

[1] While certain documents in the certified administrative record identify Kokomo Community Development Corporation as the owner of the property, Kokomo Urban has explained that it is the party that pays the taxes on the property and thus the "taxpayer" for purposes of this appeal. (See, e.g., Cert. Admin. R. at 133 n. 1, 162, 170; Pet'r Corrected Br. at 2.) Neither the Assessor nor the Indiana Board contested Kokomo Urban's standing in pursuing this litigation. (See Cert. Admin. R. at 271-77; Resp't Br.; Oral Arg. Tr.)

[2] The Auditor determined that pursuant to Indiana Code § 6-1.1-12.1-1(4), the benefit of the economic revitalization area ("ERA") deduction did not extend to Kokomo Urban's land. (See Cert. Admin. R. at 113 ¶ 2, 272 n. 3.)

Indiana Code § 6-1.1-20.6-7.5. (Cert. Admin. R. at 113-14 ¶¶ 2, 7, 9-10.) Her

calculation of the property's 2% tax cap amount was:

1) $2,424,200 (gross assessed value of Kokomo Urban's improvements) + $32,500 (gross assessed value of Kokomo Urban's land) = $2,456,700;

2) $2,456,700 x 2% = $49,134

(Cert. Admin. R. at 114 ¶ 7.)

Kokomo Urban challenged the computation of its 2016 property tax liability,

first with the Howard County Property Tax Assessment Board of Appeals and then

with the Indiana Board. (See Cert. Admin. R. at 1-5.) Throughout those appeals,

Kokomo Urban argued that under Indiana Code § 6-1.1-20.6-7.5, its maximum

property tax liability was capped at approximately $25,000, calculated as follows:

1) $2,424,200 (gross assessed value of Kokomo Urban's improvements) x 50% (ERA deduction) = $1,212,100;

2) $1,212,100 + $32,500 (gross assessed value of Kokomo Urban's land) = $1,244,600;

3) $1,244,600 x 2% = $24,892

(See, e.g., Cert. Admin. R. at 2, 138-39, 191.)[3] Thus, the difference between the

Assessor's and Kokomo Urban's calculations was whether the 2% tax cap was to be

applied to the property before or after the application of the ERA deduction.

The Indiana Board did not conduct a hearing on the matter. Rather, at the

parties' request, it decided the case based on their written briefs and designated

---

[3] Kokomo Urban presented multiple iterations of this calculation, each with a slightly different result. (See, e.g., Cert. Admin. R. at 2, 138-39, 191.) The Indiana Board attributed the variance in Kokomo Urban's results to whether the ERA deduction was to be applied to the gross assessed value of the land. (See Cert. Admin. R. at 272 n.3.) Ultimately, given the Court's holding in this opinion, the variance between Kokomo Urban's calculations is of no consequence.

3

evidence. (See Cert. Admin. R. at 15-16.) On June 20, 2018, the Indiana Board issued a final determination ruling against Kokomo Urban. Kokomo Urban initiated an original tax appeal on August 2, 2018. The Court heard the parties' oral arguments on January 14, 2019. Additional facts will be supplied when necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. Osolo Twp. Assessor v. Elkhart Maple Lane Assocs., 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Accordingly, Kokomo Urban must demonstrate to the Court that the Indiana Board's final determination in this matter is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. See IND. CODE § 33-26-6-6(e)(1)-(5) (2019).

## LAW

### 1.

An "economic revitalization area" is

> an area which is within the corporate limits of a city, town, or county which has become undesirable for, or impossible of, normal development and occupancy because of a lack of development, cessation of growth, deterioration of improvements or character of occupancy, age, obsolescence, substandard buildings, or other factors which have impaired values or prevent a normal development of property or use of property.

4

IND. CODE § 6-1.1-12.1-1(1) (2016). Property tax deductions are available for certain personal and real property located within a designated ERA. See generally IND. CODE §§ 6-1.1-12.1-0.3 to -17 (2016).

**2.**

Indiana Code § 6-1.1-20.6-7.5 caps the tax liability on property at a specific percentage of its "gross assessed value." See generally IND. CODE § 6-1.1-20.6-7.5(a) (2016). This is achieved by applying a property tax credit equal to

> the amount by which the person's property tax liability attributable to the person's:
>
> (1) homestead exceeds one percent (1%);
> (2) residential property exceeds two percent (2%);
> (3) long term care property exceeds two percent (2%);
> (4) agricultural land exceeds two percent (2%);
> (5) nonresidential real property exceeds three percent (3%); or
> (6) personal property exceeds three percent (3%);
>
> of the gross assessed value of the property that is the basis for determination of property taxes for that calendar year.

I.C. § 6-1.1-20.6-7.5(a). "Gross assessed value" is defined as "the assessed value of property after the application of all exemptions under IC 6-1.1-10 or any other provision."[4] IND. CODE § 6-1.1-20.6-1.6 (2016).

**ANALYSIS**

On appeal, Kokomo Urban contends that the Indiana Board's final determination must be reversed because in determining the maximum amount of property tax to be imposed under Indiana Code § 6-1.1-20.6-7.5, the 2% cap should have been applied to the gross assessed value of Kokomo Urban's real property

---

[4] Indiana Code § 6-1.1-10 contains over 30 specific property exemptions. See IND. CODE §§ 6-1.1-10-1 to -44 (2019).

after, not before, the application of the ERA deduction. (See Pet'r Corrected Br. at 4.) Kokomo Urban has advanced two alternative arguments to support its contention, both of which focus on the definition of "gross assessed value" in Indiana Code § 6-1.1-20.6-1.6. (See, e.g., Oral Arg. Tr. at 5-8.)

1)

Kokomo Urban first argues that in defining "gross assessed value" under Indiana Code § 6-1.1-20.6-1.6, the Legislature intended the term "exemptions" to include "deductions." As Kokomo Urban explains more fully in its brief:

> in defining "gross assessed value," [Indiana Code § 6-1.1-20.6-1.6] specifically says that it refers to assessed value of property after all "exemptions" under that chapter or any other provision are applied. . . . [T]he Indiana Code, for purposes of Article 1.1[,] explicitly define[s] the term "exemption" broadly. Specifically, Ind[iana] Code § 6-1.1-1-6 . . . provides that "['e]xemption means a situation where a certain type of property, or the property of a certain kind of taxpayer, is not taxable under this article.'" Ind. Code § 6-1.1-1-6 (emphasis added). The term exemption [therefore] means any provision or situation where property is not taxable – this clearly includes . . . property that is abated or subject to deductions, and therefore is exempt, i.e., not taxable.

(Pet'r Corrected Br. at 7.)

When construing a statute, the primary goal is to determine and apply the intent of the Legislature in enacting that statute. See Hamilton Square Inv., LLC v. Hamilton Cty. Assessor, 60 N.E.3d 313, 317 (Ind. Tax Ct. 2016), review denied. The best evidence of this intent is found in the plain language of the statute itself, as chosen by the Legislature. See id. See also Johnson Cty. Farm Bureau Co-op. Ass'n, Inc. v. Indiana Dep't of State Revenue, 568 N.E.2d 578, 581 (Ind. Tax Ct. 1991) (explaining that statutory words and phrases shall be taken in their plain, ordinary, and usual sense unless they are technical words and phrases having a

6

peculiar and appropriate meaning in law and shall thus be understood according to their technical import), aff'd, 585 N.E.2d 1336 (Ind. 1992). Consequently, meaning must be given to each and every word used in a statute because it will not be presumed that the Legislature intended to enact a statutory provision that is superfluous, meaningless, or a nullity. See Hamilton Square Inv., 60 N.E.3d at 317. In a similar vein, when the language of a statute is clear and unambiguous, the meaning of statute may not be expanded or contracted by reading into it language to correct any supposed omissions or defects. See DeKalb Cty. E. Cmty. Sch. Dist. v. Dep't of Local Gov't Fin., 930 N.E.2d 1257, 1260 (Ind. Tax Ct. 2010). Finally, the words of a statute must be read within the context of the whole statutory act of which they are a part as well as in harmony with other statutes applicable to the same subject matter. Johnson Cty. Farm Bureau Co-op. Ass'n, 568 N.E.2d at 584.

In light of these rules of statutory construction, the Court is not persuaded that the Legislature intended the term "exemptions" as used in Indiana Code § 6-1.1-20.6-1.6 to include "deductions" such as the ERA deduction at issue here. Indeed, for purposes of Indiana's whole property tax statutory system, the Legislature provided discrete statutory definitions for the terms "exemption" and "deduction." See IND. CODE §§ 6-1.1-1-5, -6 (2016) (defining "deduction" as "a situation where a taxpayer is permitted to subtract a fixed dollar amount from the assessed value of his property" and "exemption" as "a situation where a certain type of property, or the property of a certain kind of taxpayer, is not taxable"). Given these independent and substantively distinct definitions, the Legislature could not have intended the term

7

"exemptions" to include the differently defined term "deductions" or to use the two terms interchangeably for purposes of Indiana Code § 6-1.1-20.6-1.6.

This conclusion is supported by the principle of expressio unius est exclusio alterius, which instructs that the enumeration of certain things in a statute implies the exclusion of all others. Caylor-Nickel Clinic, P.C. v. Indiana Dep't of State Revenue, 569 N.E.2d 765, 772 (Ind. Tax Ct. 1991), aff'd 587 N.E.2d 1311 (Ind. 1992). Thus, with its specific reference in Indiana Code § 6-1.1-20.6-1.6 to exemptions, but not to deductions, the Legislature's plain language demonstrates its intent to exclude deductions from the formula for calculating "gross assessed value" and thus from the resulting maximum property tax to be imposed under Indiana Code § 6-1.1-20.6-7.5. Accordingly, the Court will not reverse the Indiana Board's final determination on the basis of this argument.

2)

In the alternative, Kokomo Urban argues that in defining "gross assessed value" under Indiana Code § 6-1.1-20.6-1.6, the Legislature intended the phrase "or any other provision" to mean "any other provision that reduces a property's gross assessed value," which would necessarily include deductions. (See Pet'r Corrected Br. at 8; Oral Arg. Tr. at 7.) More specifically, Kokomo Urban states:

> the language "any other provision" should include deductions because . . . it states "After the application," if you take that out, if you take out the middle clause there of "all exemptions," it basically says "After the application of any other provision," it doesn't go on to clarify any further. It doesn't say . . . "any other exemption provision," it doesn't say "any other provision regarding exemptions," it just says "any other provision," which . . . would include deductions.

(Oral Arg. Tr. at 7-8.)

8

Kokomo Urban's alternative argument <u>adds</u> words to the definition of "gross assessed value" as used in Indiana Code § 6-1.1-20.6-1.6 to arrive at the result it desires. Specifically, Kokomo Urban asks the Court to find that "gross assessed value" means "the assessed value of property after the application of all exemptions under IC 6-1.1-10 or any other provision <u>that reduces a property's gross assessed value</u>." (<u>See</u> Pet'r Corrected Br. at 8.) As previously noted, however, words will not be read into a statute that simply are not there. <u>See</u> <u>DeKalb Cty. E. Cmty. Sch. Dist.</u>, 930 N.E.2d at 1260.

Furthermore, Kokomo Urban's argument ignores the actual grammatical structure of Indiana Code § 6-1.1-20.6-1.6's phrase "after the application of all exemptions under IC 6-1.1-10 or any other provision." The word "exemptions" in that phrase is modified by the prepositional phrase "under IC 6-1.1-10 or any other provision." "Under," the preposition, is followed by the compound object "IC 6-1.1-10 or any other provision." Thus, the content of the phrase "any other provision" is fixed by the word it modifies to mean exemptions under any other provision. This construction accounts for the fact that, as Kokomo Urban has acknowledged, not all of Indiana's property tax exemptions are codified in Indiana Code § 6-1.1-10. (<u>See</u> Pet'r Corrected Br. at 7 n.2.) Indeed, Indiana Code § 6-1.1-10-38 provides a lengthy list of Indiana Code citations that contain property tax exemptions in addition to those delineated in Indiana Code § 6-1.1-10. IND. CODE § 6-1.1-10-38 (2016).

Kokomo Urban's second argument has not convinced the Court that in defining "gross assessed value" under Indiana Code § 6-1.1-20.6-1.6, the Legislature intended the phrase "any other provision" to mean "any other provision

9

that reduces a property's gross assessed value."  Accordingly, the Court will not reverse the Indiana Board's final determination on this basis either.

## CONCLUSION

Kokomo Urban has not demonstrated to the Court that the Indiana Board's final determination is in error.  Accordingly, the Indiana Board's final determination in this matter is AFFIRMED.[5]

---

[5] During the administrative process, Kokomo Urban argued that the misapplication of the property tax cap in this case violated its constitutional right to contract under both Article I, Section 24 of the Indiana Constitution and Article I, Section 10 of the United States Constitution.  (See Cert. Admin. R. at 138 n.3.)  The Court will not address that claim having found no misapplication of the property tax cap.  In addition, Kokomo Urban asserted during the oral argument that its contract rights had been impaired "because [it] negotiated a tax benefit with the City [of Kokomo] that it thought it was entitled to . . . [but was] denied[.]"  (Oral Arg. Tr. at 17-18.)  The contract between Kokomo Urban and the City of Kokomo specifically states that the terms of the agreement "shall be construed in accordance with the laws of the State of Indiana." (Cert. Admin. R. at 172.)  Thus, the benefit Kokomo Urban mistakenly thought it was entitled to is irrelevant:  it is not entitled to a windfall merely because it relied on its own misinterpretation of the law that governed its agreement and the benefit it thought it would receive.